354 F.2d 292
 Linda SCOTT, a Partnership, consisting of Harold Beeten, Edward Frank and Sam M. Slosberg, Partners, and Robert H. Holland, Trustee in Bankruptcy of Linda Scott, Inc., Intervening Petitioner
v.
The UNITED STATES.
 No. 64-58.
 United States Court of Claims.
 December 17, 1965.
 
 Marvin J. Levin, Philadelphia, Pa., attorney of record, for plaintiff. Robert H. Holland, Bethlehem, Pa., for third party petitioner.
 Sheldon P. Migdal, Washington, D. C., with whom was Acting Asst. Atty. Gen. Richard M. Roberts, for defendant. Sheldon J. Wolfe, Washington, D. C., of counsel.
 Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.
 DAVIS, Judge.
 
 
 1
 Linda Scott, a partnership consisting of three partners — Harold Beeten, Edward Frank, and Sam M. Slosberg — commenced this action on February 15, 1958, to recover an amount allegedly due as an equitable adjustment for additional work it had been required to perform under a supply contract executed in 1951 with the Department of the Army. The trial commissioner's report indicates that it was stipulated in this proceeding that $9,456 is due and owing from the Government on the contract claim.[1] On May 29, 1962, the trustee in bankruptcy of Linda Scott, Inc., the assignee of the assets of Linda Scott, the partnership, filed an intervening petition stating, in effect, a claim to the amount due under the contract and requesting the court to determine whether the partnership or the trustee was the proper recipient of that amount.[2] The defendant has asserted counterclaims against the trustee in bankruptcy for certain taxes owed by Linda Scott, Inc., and against Harold Beeten, one of the members of the claimant partnership, for $13,618.76 assessed against him as a 100 per cent penalty under the applicable Internal Revenue Code provisions for his alleged willful failure, as the responsible corporate official, to pay to the Government certain withholding and F.I.C.A. tax assessments made against Richard Scott, Inc. (a separate corporation otherwise uninvolved in this litigation).
 
 
 2
 After the trial commissioner's report was filed, none of the parties took any further steps and we dismissed for default the plaintiff's petition and the trustee's intervening petition, by order dated June 5, 1964.[3] Neither the plaintiff nor the intervenor has asked to set aside this default. The June 5th order also dismissed the Government's two counterclaims. On June 10th, however, the defendant moved for relief from this portion of the court's order, and for leave to file a brief and exceptions to the commissioner's findings. By order of October 16, 1964, we set aside the judgment dismissing the counterclaims on the ground that the defendant's failure earlier to file a brief and exceptions constituted "excusable neglect." Accordingly, we must now dispose of these two tax counterclaims.
 
 
 3
 The trial commissioner has found that taxes, properly assessed against Linda Scott, Inc. between February 1954 and August 1956, remain unpaid. The trustee in bankruptcy of Linda Scott, Inc., does not except to these findings or contest, in any way, the corporation's liability. There is no reason to reject the commissioner's conclusion. Judgment on the counterclaim for these taxes must therefore be entered against the trustee as provided by law.
 
 
 4
 The tax counterclaim against Beeten, for unpaid Richard Scott, Inc. taxes, presents two questions. The first is whether Beeten may be held responsible, and a penalty assessed against him, for these imposts. The second, of more general interest, is whether, in an action commenced by a partnership, the Government may maintain a counterclaim against one member of the partnership arising out of a transaction wholly unrelated to the partnership's claim and with which it has no concern.
 
 
 5
 We are clear that, if the defendant's tax-penalty claim against Beeten may be considered in this proceeding, the controlling provision of the 1939 Internal Revenue Code — § 2707(a) — entitles the Government to recover.[4] This section declares that "any person who willfully fails to pay, collect, or truthfully account for and pay over * * *" certain taxes (including withholding and F.I.C.A. taxes[5]) may be assessed "a penalty of the amount of the tax evaded, or not paid, collected, or accounted for and paid over * * *." Corporate officers under a duty to discharge these general tax-collecting functions are included within the class to which § 2707(a) applies. § 2707(d), 1939 I.R.C. The unchallenged findings disclose that Richard Scott, Inc., incurred withholding and F.I.C.A. tax liabilities in four fiscal quarters of 1954 and 1955 in the amount of $13,618.76; that Harold Beeten was an incorporator, director, and secretary-treasurer of Richard Scott, Inc.; that as treasurer of the corporation during two quarters in 1954[6] he had the authority, duty, and responsibility to collect, account for, and pay over to the Treasury the tax liability then incurred; that the Treasury assessed a 100 per cent penalty for unpaid Richard Scott, Inc., taxes against Beeten; that the Commissioner of Internal Revenue gave him notice of, and demand for payment of, this assessment; and, finally, that Beeten's failure to collect and remit the taxes was "a knowing, deliberate, and willful act on his part." No more is needed; these findings are supported by the evidence, and meet the twin requirements of § 2707(a) — a willful default in the payment of taxes by a responsible person.
 
 
 6
 The condition that the failure to pay the overdue taxes be willful has been seen by the courts of appeals passing on the point as calling for proof of a voluntary, intentional, and conscious decision not to collect and remit taxes thought to be owing — and not as requiring a special intent to defraud or deprive the Government of the monies withheld on its account. Bloom v. United States, 272 F.2d 215, 223 (C.A. 9, 1959), cert. denied, 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146 (1960); Flan v. United States, 326 F.2d 356, 358 (C.A. 7, 1964); Dillard v. Patterson, 326 F.2d 302, 304-305 (C.A. 5, 1963). These courts have rejected suggestions that a finding of willfulness entails a showing of evil motive, bad purpose, or calculated malevolence. Bloom v. United States, supra, 272 F.2d at 223-224; Dillard v. Patterson, supra; Frazier v. United States, 304 F.2d 528, 530 (C.A. 5, 1962). They focus, rather, on the deliberate nature of the individual's election not to pay over the money and the circumstances of that refusal. See 8A Mertens, Federal Income Taxation § 47A.25a at 127 (1964). We agree with this reading of the statute.
 
 
 7
 In the two fiscal quarters here involved, Mr. Beeten either deliberately caused tax returns to be filed or acquiesced (apparently without objection) in their filing while aware that the proper withholding taxes were not being paid. As an accountant, he was familiar with the provisions of the withholding tax laws. As treasurer of Richard Scott, Inc., he supervised the activity of the bookkeeper preparing the corporate tax returns, and clearly "knew that the corporation was not * * * depositing the withholding taxes" in accordance with the law. Although "it appears very probable" that corporate funds sufficient for timely payment of the necessary withholding taxes were unavailable at the time of the returns, it is also plain that Beeten either failed to cause the requisite taxes to be collected or that (by his direction or with his approval) they were collected and thereafter used to pay other corporate creditors, rather than the Government. This intentional preference of others over the United States constituted a willful failure to collect and pay the taxes within § 2707(a). See Flan v. United States, supra, 326 F.2d at 358; Frazier v. United States, supra, 304 F.2d at 530; Dillard v. Patterson, supra, 326 F.2d at 304; Rev.Rul. 54-158, CB 1954-1, at 247.[7]
 
 
 8
 The second requirement of the penalty provision — that the person failing to make the remittance have a duty to do so — applies by its terms to corporate officers who are found legally obliged to pay the taxes over to the Government. § 2707(d). Mr. Beeten possessed general authority to sign a wide variety of corporate documents (including tax returns), to draw checks on the corporate bank account, and to make decisions respecting financial difficulties arising in the ordinary course of business, as well as the special authority and responsibility to collect and remit to the Treasury money withheld from employee wages. Plaintiff's claim that he did not have such authority is supported only by his own testimony (some of which must be rejected on various grounds, see finding 30(b)), and, in the light of the other evidence, cannot be accepted. Cf. United States v. Strebler, 313 F.2d 402, 404 (C.A. 8, 1963). It is inconsequential that exclusive control over all corporate affairs was not vested in him, or that the corporation's president retained a considerable measure of decision-making discretion. Section 2707(d) is not so phrased or designed as to exclude one corporate officer from its sanction merely because it might also be held to extend to another. Realistically read, the subsection encompasses all those who are so connected with a corporation as to have the responsibility and authority to avoid the default which constitutes a violation of § 2707(a), even though liability may thus be imposed on more than one person. Scherer v. United States, 228 F.Supp. 168, 170 (D.C.Idaho, 1963).
 
 
 9
 Beeten says, however, that an independent counterclaim against an individual partner will not lie in a suit by the partnership, and asks us to adhere to that rule as laid down in Boehm v. United States, 20 Ct.Cl. 142 (1885), and reaffirmed in Marietta Mfg. Co. v. United States, 61 Ct.Cl. 122 (1925).[8]
 
 
 10
 This problem must be scanned within the framework of our jurisdictional statute and our rules, and against the backdrop of modern procedural practice. Section 1503 of Title 28 gives this court "jurisdiction to render judgment upon any set-off or demand by the United States against any plaintiff in such court" and Section 2508 likewise grants power to hear and decide counterclaims by the United States "against any plaintiff making claim against the United States" in this court.[9] See McElrath v. United States, 102 U.S. 426, 26 L.Ed. 189 (1880); Cherry Cotton Mills v. United States, 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835 (1946). Our rule on counterclaims (now Rule 21, formerly Rule 17) is similar to that of the Federal Rules of Civil Procedure (F.R.C.P. 13); subsection (a) marks as compulsory any claim which the defendant "has against any plaintiff" if it arises out of the transaction or occurrence that is the subject matter of the petition and does not require the presence of third parties who cannot be brought in, while subsection (b) permits as a counterclaim any other demand "against a plaintiff."[10] These words of the statute and rule, unqualified as they are, may tend in their breadth to support the counterclaim here, but they do not compel that result. Decision must be reached through the corridors of judicial administration and procedural philosophy.
 
 
 11
 The four principle arguments for the position we announced in 1885 and reiterated in 1925 are that (1) the only counterclaims or set-offs allowed by Congress are "mutual debts or demands" by and against the partnership itself (Marietta Mfg. Co., supra, 61 Ct.Cl. at 125); (2) unless the claim is disallowed the individual partner's debt to the United States will be satisfied out of partnership assets (Boehm, supra); (3) allowance of claims unrelated to that stated in the petition will result in trial confusion, delay, and injustice (Marietta Mfg. Co., supra, 61 Ct.Cl. at 125); and (4) since courts increasingly regard partnerships as separate jural entities for procedural purposes, we should hold that the partnership, as distinct from the partners individually, is the sole "plaintiff" in this proceeding (within our Rule 21(b)) against whom counterclaims may be asserted. Cf. Ruzicka v. Rager, 305 N.Y. 191, 111 N.E.2d 878, 881, 39 A.L.R.2d 288 (1953). We consider these points seriatim, but none of them seems to us sufficiently valid in the prevailing conditions of our day to call for continued application of the Boehm-Marietta rule.
 
 
 12
 At the outset, we note that Congress, in the legislative history of Section 3 of the Act of March 3, 1863, 12 Stat. 765 (the forerunner of §§ 1503 and 2508) did not advert to, or dispose of, the issue now before us. There were references in the debates to "mutual" claims (60 Cong. Globe Appendix 123, 124 (1862)) and to set-off "such as is generally resorted to in the States" (58 Cong. Globe 1675 (1862[11]), but a stand was also taken for "a settlement of all transactions" and in favor of "the wise policy of preventing a multiplicity of suits" (60 Cong. Globe Appendix 123, 124 (1862)). We think it apparent that Congress intended the provision, formulated in general phrases, to enable the Government to make as full use of its counterclaim power as accepted or respected principles allow at any particular time.[12] It would be too rigidly antiquarian to insist that, as counterclaim provisions have expanded over the years, Congress mummified the counterclaim rights of the defendant in this court in the precise shape and form they had in 1862-1863.
 
 
 13
 The second and third arguments against the Government's right depend upon considerations of fairness and convenience related to procedural rules no longer with us. In Boehm the defendant sought, in an action by a three-member partnership, to set off a judgment previously recovered against two of the partners. With little discussion, the court held that this was impermissible at law.[13] It was said that to allow the Government to set off against a plaintiff-partnership a debt due from an individual partner would prejudice the non-debtor partners, since the partnership's total recovery would be diminished by the amount of the individual debt. This may have been so in 1885 because the court then did not deem itself able to enter several judgments on the separate claims; set-off involved a single judgment for the difference between the two claims asserted. See Note, 7 Chi.L.Rev. 394, 395 (1940). That being the law's limitation, fairness may well have demanded dismissal of the counterclaim. Reaffirming the Boehm rule in Marietta, the court gave a comparable practical reason for refusing such counterclaims: "confusion, delay and injustice could arise in the disposition of the original suit" if an individual counter-demand could be set off in a partnership suit "and be heard along with the original suit." There was then no mechanism for a separate trial of the several issues in a case, and it was felt that the burdens of a joint trial of a given counterclaim outweighed all alleged advantages, at least where the counterclaim did not affect all the parties. In 1885 and 1925 the procedures available to handle offsetting claims were at an intermediate stage of their present development — more expansive, surely, than common law recoupment, but not nearly as liberal, in the interest of efficiency and fairness, as the modern federal practice. Clark, Code Pleading §§ 100-104 (1947). Boehm and Marietta reflected that period in civil procedure.
 
 
 14
 The procedural rules now followed in the federal courts, including our own, have furnished devices which improve upon the restrictive practices leading to the Boehm-Marietta ruling, and which give the courts a different touchstone by which to test the question today. These rules permit courts, in their discretion, to order separate trials and to enter separate judgments in cases involving counterclaims. Our Rule 47(b) allows "the court, in furtherance of convenience or to avoid prejudice, * * * [to] order a separate trial of any claim or counterclaim, or of any separate issues, or of any number of claims, counterclaims, or issues; and * * * [to] enter appropriate orders or judgments with respect to any such issues, claims or counterclaims that are tried separately." Cf. F.R.Civ.P. 42(b) and 54(b). Confusion which might result from taking evidence on wholly unrelated issues at the same trial may, if necessary, be eliminated by such separate treatment. If the United States prevails on its counterclaim, the court may enter a separate judgment against an individual partner, thus averting the possibility that that partner's debt might be unfairly satisfied out of partnership assets. While Rule 47(b) explicitly provides for separate judgments only where a separate trial is ordered, such judgments are allowed in multiple party claims (Ct.Cl. Rule 26(a), F.R. Civ.P. 20(a)), and there is no adequate reason to prohibit them in this analogous context. Indeed, Rule 13(i) of the Federal Rules expressly provides that judgment may be entered on a counterclaim even where the claims of the opposing party, as here, have been dismissed.[14] The short of it is that the practical objections raised in Boehm and Marietta no longer exist.
 
 
 15
 The trial commissioner's report confirms what, from our experience, we think is beyond doubt — that the rule we adopt will not unduly burden or prejudice any party in the normal litigation. The report demonstrates that, except perhaps in the extraordinary case, the trial judge may competently consider unrelated claims in one proceeding, sometimes even without ordering separate trials. The findings treat distinctly, and without confusion, the partnership's breach-of-contract claim, the tax counterclaim against Linda Scott, Inc., and that against Mr. Beeten (for taxes withheld by Richard Scott, Inc.). Delays in the prompt resolution of this litigation related primarily to the intervening petitioner's claim to the contract proceeds and to the fact that the Government initially did not distinguish between the Richard Scott, Inc., and Linda Scott, Inc., tax liabilities. These delays did not result from the joint trial of the contract claim and the counterclaim against Beeten. In sum, we know of no functional reason, nor has any been cited to us, to dismiss this counterclaim and require the Government to resort to another federal forum elsewhere to assert its demand against a party with whom it is already litigating.
 
 
 16
 The theoretical argument that the partnership is an entity and it, rather than the partners individually, must be held to be the sole plaintiff in this suit does not convince us. Unlike corporations, partnerships are not consistently treated as units, but just as often (or more so) as an aggregation or combination of individuals. Uniform Partnership Act § 6. That they may bring suit in the entity name (e. g., "Linda Scott, A Partnership Consisting of Harold Beeten, Edward Frank and Sam M. Slosberg * * *"), rather than in the name of the co-owners (e. g., "A & B, Partners, Trading As * * *"), does not usually determine the way courts will view them for a particular purpose, and is generally no more than a matter of form or preference. The choice of how to deal with partnerships in various contexts must be based on weightier considerations of substance. The salutary objectives of the counterclaim rules should not turn on the sequence of the names in the pleadings, or be defeated by a reversal of that order. Nor should the rules be read as permitting partners to avoid individual counterclaims by the simple expedient of bringing the action in the name of the partnership and omitting their own names entirely.
 
 
 17
 We recognize that, in these days, courts consider partnerships as entities for some procedural purposes — such as venue and service of process (see Joscar Co. v. Consolidated Sun Ray, Inc., 212 F.Supp. 634, 636-638 (E.D.N.Y.1963)) — but the ultimate aim of such treatment is usually fairness and convenience, rather than the acceptance of the entity theory for all purposes. Cf. Sperry Products Inc. v. Association of American Railroads, 132 F.2d 408, 410-411 (C.A. 2, 1942). Thus, while state statutes permit partnerships to sue and be sued in the partnership name, and Federal Rule of Civil Procedure 17(b) similarly provides in suits for the enforcement of rights existing under the Constitution and laws of the United States, the main reason for adoption of these provisions is that plaintiffs suing partnerships under the common law rule were burdened with the task of ascertaining and naming the members of the partnership as defendants. See Ruzicka v. Rager, 305 N.Y. 191, 111 N.E.2d 878, 881 (1953); 2 Barron & Holtzoff, Federal Practice and Procedure § 487 (Wright ed. 1961). In the present situation, however, there are no similarly compelling practical reasons to consider partnerships as entities, rather than as aggregates of individuals. Whatever merit there may be to the point that consistency entails a uniform entity treatment of partnerships for all procedural purposes, we find outweighed by the realistic considerations mentioned earlier, as well as by the theory of the present-day counterclaim system (to be discussed presently).[15]
 
 
 18
 Our partners' own view of their position is instructive in this connection. It is evident that they did not consider the partnership an entity, but rather saw themselves as individuals before this court asserting a jointly-held claim arising out of their common business. For example, on December 4, 1958, two of the partners, Frank and Slosberg, moved for summary judgment for their two-thirds of the Linda Scott contract claim and for dismissal, with respect to them, of the Government's tax counterclaim against Beeten, on the postulate that the contract claim belonged to the partners in equal shares as individuals. They acted on this basis during the entire course of the litigation (see footnote 8, supra). Although this was the reaction of a particular set of partners, we think it not insignificant or unrepresentative; it buttresses the conclusion that, in the normal case, partners will not find themselves put upon or unduly inconvenienced if viewed as the individual owners of the claim and individual plaintiffs for counterclaim purposes.
 
 
 19
 We find, therefore, that none of the four reasons given for the Boehm-Marietta rule currently sustains that restriction on the right of counterclaim. On the other hand, while our counterclaim rule (21) (see F.R.Civ.P. 13) does not specifically answer the question, the essential theory of that rule, and of the related provisions governing joinder of claims and multi-party litigation, affirmatively supports allowance of the Government's tax demand. This general theory encourages "unlimited joinder at the pleading stage, with power in the court to order separate trial of a particular issue if this is in fact convenient or desirable." Wright, Federal Courts 299 (1963). The overriding emphasis is on consolidation and the expeditious resolution (where that is fair) of all the claims between the parties in one proceeding. The specific provisions of Rule 21 teach this. Counterclaims arising out of the same transaction as the claim must be asserted, at the risk of being waived. Any claim may be asserted whether or not it is related to the subject matter of the original claim. Counterclaims "may or may not diminish or defeat the recovery sought by a plaintiff [and] * * * may claim relief exceeding in amount or different in kind from that sought in the petition."[16] This is in direct contrast to the earlier, more circumscribed, rules which allowed counterclaims only if they arose out of the same transaction as was the basis of the complaint,[17] or diminished or defeated the plaintiff's recovery. Clark, Code Pleading § 101 (1947). The effort to consolidate and avoid duplicating litigation is also evident in Rule 13(a) (2) providing for the joinder of "as many separate claims or defenses" as a party has, Rule 23 allowing impleader of any third party "who appears to have an interest in the subject matter" of a claim, and Rules 25 through 28 dealing with joinder of parties and intervention. (The parallel Federal Rules of Civil Procedure are similar in substance.) The controlling philosophy is that, so far as fairness and convenience permit, the various parties should be allowed and encouraged to resolve all their pending disputes within the bounds of the one litigation.[18] To say that an individual partner-plaintiff can veto the maintenance of an individual counterclaim against him, even though convenience and fairness would be served by allowing it, goes counter to this basic premise and affords partners a technical, artificial device for proliferating litigation and possibly escaping valid demands against them.
 
 
 20
 The decisions disallowing counterclaims against plaintiffs as individuals in actions commenced by them in a representative capacity (see 1A Barron & Holtzoff, Federal Practice and Procedure § 398 (Wright ed. 1961))[19] do not require us to continue in the opposite position. Individuals suing as the representative of another or as a fiduciary do not benefit, in any immediate, personal way, from the judgments entered in those suits. But judgments rendered on partnership demands result in an immediate pro rata gain to the individual partners, since they actually own the claim in most senses. Inherent in the notion of ticking off the parties' debts and obligations to achieve an ultimate balance — the concept underlying the counterclaim rules — is the necessary condition that the parties against whom counterclaims may be lodged have a personal, beneficial interest in the claim declared in the complaint or petition. The rulings disallowing counterclaims against plaintiffs suing in a representative capacity rest on the assumption that such persons do not. See, e. g., Higgins v. Shenango Pottery Co., supra, 99 F.Supp. 522, 524 (W.D.Pa. 1951). Zion v. Sentry Safety Control Corp., 258 F.2d 31 (C.A. 3, 1958), is also different. The question there was whether a single partner, when sued, had to assert a partnership claim as a compulsory counterclaim under Federal Civil Rule 13(a). For the court, the basic question was whether an individual partner has the capacity to assert a partnership claim under Federal Rule 17(b), which requires that this question be decided as one of state law. It held that the single partner lacked such capacity to sue under Pennsylvania law. We face no problem of capacity to sue,[20] and base our holding on our own statute and rules of procedure, not state law.
 
 
 21
 Because they no longer represent the better practice, we decline to follow Boehm and Marietta in our day and hold that, except perhaps for exceptional situations,[21] the defendant may counterclaim against an individual partner-plaintiff for independent causes of action unrelated to that on which the partnership sues. This is also the result in the only reported case we have found on the point under the Federal Rules of Civil Procedure. Abraham v. Selig, 29 F.Supp. 52 (S.D.N.Y.1939).
 
 
 22
 Judgment is accordingly entered against Robert H. Holland, the trustee in bankruptcy of Linda Scott, Inc., on the defendant's counterclaim, plus penalties and interest (to be determined under Rule 47(c))[22] and against Harold Beeten in the amount of $10,416.89 plus interest (the amount likewise to be determined under Rule 47(c)).
 
 
 
 Notes:
 
 
 [1]
 Plaintiff initially sought to recover $10,805.30. On April 18, 1958, the contracting officer determined that the sum of $9,456 constituted an equitable adjustment in the contract price. Plaintiff thereafter amended its petition to claim that sum
 
 
 [2]
 The assets of Linda Scott, the partnership, were sold sometime prior to March 2, 1953, to the newly-organized Linda Scott, Inc. On March 6, 1955, Harold Beeten, as President of Linda Scott, Inc., filed a petition in bankruptcy with the District Court for the Eastern District of Pennsylvania. The bankruptcy trustee was subsequently misled into concluding that the contract claim involved in this litigation hadnot been assigned by Linda Scott, the partnership, to Linda Scott, Inc., the corporation he represented, and entered into a stipulation releasing any and all interest he might have in the contract. The trustee's petition in this court also seeks to set aside this stipulation. In accordance with the trial commissioner's findings, we relieve the trustee of the stipulation and hold the Linda Scott, Inc. succeeded to the rights of the Linda Scott partnership in the contract claim involved here.
 
 
 [3]
 The order stated: "This case comes before the court on the merits, having been submitted on a report by Trial Commissioner Franklin M. Stone which is attached hereto and made a part hereof. It appears to the court that the trial commissioner's report was filed on January 8, 1964, that no exceptions or brief has been filed by any party nor has any party filed a motion for extension of time to file exceptions or brief, that the time for so filing has expired, and pursuant to the provisions of Rule 63 ["Default"],
 IT IS ORDERED that plaintiff's petition, the intervening petition and defendant's counterclaims be and the same are dismissed for default."
 
 
 [4]
 Richard Scott, Inc., owed withholding taxes for the first and second quarters of 1954 under Section 1622(a) of the 1939 Code and social security taxes under sections 1400 and 1401(a). The penalty provisions of § 2707(a) apply to these violations. The company also owed withholding taxes for the second and third quarters of 1955 under section 3402(a) of the 1954 Code and social security taxes under sections 3101 and 3102(a). The penalty provisions of section 6672 of the 1954 Code apply to these violations
 The Government now concedes that Beeten terminated his relationship with Richard Scott, Inc., on May 3, 1955, and cannot be held accountable for the 1955 taxes. Of the total assessed and initially claimed ($13,618.76), the defendant now asks to recover only $10,416.89, the amount due in the two quarters of 1954 minus a sum which has been remitted.
 
 
 [5]
 The provisions of § 2707 are made applicable to these taxes by Sections 1430 and 1627 of the 1939 Code
 
 
 [6]
 The Government now concedes that Beeten was not a responsible officer during the part of 1955 for which taxes are owed. See note 4, supra
 
 
 [7]
 We need not reach the question raised by the plaintiff whether, in other circumstances, an insufficiency of funds with which to pay overdue taxes may exclude a responsible corporate officer from the coverage of the section
 
 
 [8]
 Throughout the trial and most of the litigation, the parties assumed that the defendant could counterclaim against Beeten individually. On its own motion the court raised this question and ordered it briefed. Beeten now maintains that the counterclaim cannot be maintained while the Government argues that Boehm and Marietta Mfg. Co. are no longer good law
 
 
 [9]
 In pertinent part § 2508 reads: "Upon the trial of any suit in the Court of Claims in which any set-off, counterclaim, claim for damages, or other demand is set up on the part of the United States against any plaintiff making claim against the United States in said court, the court shall hear and determine such claim or demand both for and against the United States and plaintiff
 If upon the whole case it finds that the plaintiff is indebted to the United States it shall render judgment to that effect, and such judgment shall be final and reviewable."
 
 
 [10]
 Rule 21 ("Counterclaims") provides (in part): "(a)Compulsory Counterclaim: The answer shall state as a counterclaim any claim which, at the time of serving the answer, the defendant has against any plaintiff, if it arises out of the transaction or occurrence that is the subject matter of the petition and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction: Provided, That such a claim need not be so stated if at the time the action was commenced the claim was the subject of another pending action.
 "(b) Permissive Counterclaim: The answer may state as a counterclaim any claim against a plaintiff not arising out of the transaction or occurrence that is the subject matter of the petition."
 
 
 [11]
 At that time the state courts did not usually permit individual counterclaims against persons suing on a joint claim
 
 
 [12]
 In Cherry Cotton Mills v. United States, supra, 327 U.S. at 539, 66 S.Ct. at 730 (1946), the Supreme Court observed: "We have no doubt but that the set-off and counterclaim jurisdiction of the Court of Claims was intended to permit the Government to have adjudicated in one suit all controversies between it and those granted permission to sue it * * *."
 
 
 [13]
 In a lengthy dictum the court declared that the relief sought could "probably" be granted in equity, but that it did not have equity powers under its then jurisdictional statute. It is doubtful, however, that this analysis of the difference in the power of law and equity courts was correct. See cases cited in 39 A.L.R.2d 295, 302 (1955)
 
 
 [14]
 Where the plaintiff's claim is dismissed for lack of jurisdiction, this court has thus far refused to consider the counterclaim. Tuason Const'r Co. v. United States, Ct.Cl. No. 378-62, order of June 12, 1964, 166 Ct.Cl. 597
 
 
 [15]
 Ruzicka v. Rager, supra, 305 N.Y. 191, 111 N.E.2d 878 (1953), held that an independent counterclaim could not be asserted against a member of a limited partnership, but confined its ruling that the organization was a jural unit tolimited partnerships, and rested primarily on the New York legislature's treatment of partnerships. See Klebanow v. New York Produce Exchange, 344 F.2d 294, 297 (C.A.2, 1965). We do not today decide how we would treat a limited partnership.
 
 
 [16]
 The comparable Federal Rules of Civil Procedure are the same, in essence, with differences not now material
 
 
 [17]
 Counterclaims on contracts could also be asserted even though unrelated to the transaction giving rise to the plaintiff's claim. Clark, Code Pleading § 101 (1947)
 
 
 [18]
 Cherry Cotton Mills v. United States, supra, 327 U.S. at 539, 66 S.Ct. at 730, points out that counterclaim legislation like ours "has long been favored and encouraged because of a belief that it accomplishes among other things such useful purposes as avoidance of `circuity of action, inconvenience, expense, consumption of the courts' time, and injustice.'"
 
 
 [19]
 E.g., Higgins v. Shenango Pottery Co., 99 F.Supp. 522 (W.D.Pa., 1951) (stockholders' derivative action); Chambers v. Cameron, 29 F.Supp. 742 (N.D.Ill., 1939) (action by trustees); Cravatts v. Klozo Fastener Corp., 15 F.R.D. 12 (S.D. N.Y., 1953) (dictum) stockholders' derivative action); Pioche Mines Consol., Inc. v. Fidelity Philadelphia Trust Co., 206 F.2d 336 (C.A.9), cert. denied, 346 U.S. 899, 74 S.Ct. 225, 98 L.Ed. 400 (1953) (counterclaim against trustee in individual capacity permitted; objection waived by going to trial on counterclaim); Durham v. Bunn, 85 F.Supp. 530 (E.D.Pa., 1949); United States for Use of Mutual Metal Mfg. Co. v. Biggs, 46 F.Supp. 8 (E.D.Ill., 1942); but cf. Moore-McCormack Lines, Inc. v. McMahon, 235 F.2d 142 (C.A.2, 1956) (widow suing as special statutory trustee under the Jones Act permitted to be counterclaimed against as administratrix)
 
 
 [20]
 All the partners of Linda Scott joined in the action in this court, and there is, of course, no doubt that Harold Beeten has the capacity to be sued (through the counterclaim) as an individual
 
 
 [21]
 There may conceivably arise cases in which it would be unfair or too inconvenient to allow the counterclaim, and in which the provisions for separate trials and separate judgments will not afford a sufficient cure. We leave open the question whether, in such circumstances, the trier has discretion to remit the counterclaimant to another forum
 
 
 [22]
 In the determination of the final judgment against the trustee, account should be taken (since Linda Scott, Inc. is the proper successor to that claim of the Linda Scott partnership, see note 2, supra) of the $9,456 admittedly owing by the Government on the contract claim by the Linda Scott partnership