Richard A. LATHAM, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 603–84T.

United States Claims Court.

July 10, 1986.

Matthew J. Foster, Tampa, Fla., for plaintiff; Macfarlane, Ferguson, Allison & Kelly, of counsel.

Neil V. Birkhoff, Washington, D.C., with whom was Asst. Atty. Gen., Roger M. Ol-

sen, for defendant; Mildred L. Seidman, of counsel.

## OPINION

PHILIP R. MILLER, Judge:

*Statement of the Case*

This is a suit to recover overpayment of $311.75, plus interest, paid in partial satisfaction of 100 percent penalties assessed against plaintiff, under the authority of § 6672 of the Internal Revenue Code of 1954, for unpaid employee withholding taxes of Stanford Rowe Marketing, Inc. (Stanford Rowe) and Jet Lists & Mail, Inc. (Jet Lists) for the second, third, and fourth quarters of 1980 and the first and second quarters of 1981. Defendant has counterclaimed for $39,915.31, plus interest, representing the unpaid balance of the assessments.

In its brief, defendant now concedes that plaintiff is not liable for the 100 percent penalty assessed for the second quarter of 1981, entitling plaintiff to a refund or credit of $42.80 and reducing the government's counterclaim to $38,120.75.

The pertinent statutes are:

Internal Revenue Code of 1954 (26 U.S. C.):

§ 6672. • *FAILURE TO COLLECT AND PAY OVER TAX, OR ATTEMPT TO EVADE OR DEFEAT TAX.*

(a) *General Rule.*—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for any pad over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

and

§ 6671. *RULES FOR APPLICATION OF ASSESSABLE PENALTIES.*

\*    \*    \*    \*    \*    \*

(b) *Person Defined*—The term "person", as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

The questions at issue are:

1. Whether plaintiff was a person under a duty to account for an pay over the employment tax?

2. Whether plaintiff's failure to account for and pay over the taxes was willful?

Stanford Rowe was incorporated in 1979 as a letter shop, engaged in the business of cutting, folding, addressing and inserting in envelopes materials for direct mailings. Until June or July 1980, the sole shareholders of that company were Stanley S. Cole and Don McCarther. At that time Mr. McCarther resigned, and, thereafter, Mr. Cole was the sole shareholder of Stanford Rowe.

During 1979 and the first quarter of 1980, plaintiff, Richard A. Latham, worked as sales manager for Lewis Business Products, Inc., which was engaged in computerized printing of business forms and other business printed paper products. Mr. Cole and plaintiff became interested in combining the direct mailing operations of Stanford Rowe with a print shop which would do the custom printing of the materials sent out in Stanford Rowe's direct mailings. Plaintiff resigned his position at Lewis Business Products, Inc., and on April 15, 1980, plaintiff and Mr. Cole incorporated Jet Lists to provide such computerized custom printing. Each owned 50 percent of the stock of Jet Lists, although Cole paid several thousand dollars for his shares of stock while plaintiff's capital investment was nominal. In addition, plaintiff induced his brother-in-law, a doctor, to invest an additional $37,000 in the stock of Jet Lists.

From the start, Stanford Rowe and Jet Lists, although separate corporations, oper-

ated closely together. While Stanford Rowe continued to have customers independent of Jet Lists, each occupied a portion of the same building. They had a single checking account under the name Mailing Services and Mailing Lists, U.S.A. They had the same bookkeeper. They used the same outside accounting firm. Although, the different operations of the two companies required different kinds of employees, relatively unskilled employees for the envelope preparation, stuffing and mailing, and highly skilled and highly paid persons for the operation of the computerized custom printing machines, they combined the reporting of wages and withholding taxes each quarter in a single form 941, "Employer's Quarterly Federal Tax Return," filed under the Stanford Rowe name.

Although Stanford Rowe did not pay over the withholding taxes shown on the forms 941, to avoid a penalty it filed a return for each quarter showing the amount due. The total wages, tax liabilities, amounts deposited in trust for the United States and remaining taxes due for the four quarters in issue were as follows:

| Quarter Ending | Wages Paid | Tax Liability For Period | Amount Deposited | Remaining Taxes Due |
|---|---|---|---|---|
| 6/30/80 | $43,545 | $11,138 | —0— | $11,138 |
| 9/30/80 | 58,103 | 17,138 | —0— | 17,138 |
| 12/31/80 | 59,231 | 17,092 | $9,262 | 7,830 |
| 3/31/81 | 44,907 | 13,449 | —0— | 13,449 |

The record does not contain evidence from which it may be possible to allocate separately the tax liability attributable to the services performed by employees on behalf of Stanford Rowe and on behalf of Jet Lists.

In these related businesses Stanley Cole devoted himself primarily to the operations of Stanford Rowe, while plaintiff devoted himself to those of Jet Lists. In his testimony, each professed lack of expertise in the operations of the other. Cole testified that "Latham had nothing to do with Stanford Rowe primarily. In Jet Lists, his responsibility was the computer and computer people and the people that operated the ink-jet process * * * he would supervise them." As already noted, Stanford Rowe had an ongoing mailing business independent of Jet Lists. Cole stated that Latham did not sell the services of Stanford Rowe except when in combination with the Jet Lists portion of the business, which he could sell as a single package.

The combined businesses maintained a single checking account in which both Cole and plaintiff were signatories entitled to withdraw funds. Cole explained that he primarily signed the checks attributable to the business of Stanford Rowe, while Latham primarily signed those having to do with Jet Lists. "[H]e would not have had any knowledge of anything that was going on at Stanford Rowe." Since the checks required of Stanford Rowe were much more numerous, Cole signed the great majority of them. Latham would only sign a check for a Stanford Rowe obligation when authorized or requested to do so by Cole. However, Latham was the primary signer of checks having to do with payment of obligations of Jet Lists. Since both men travelled, it is reasonable to infer that the signing of checks relating to the business of the other occurred when the primary signer was out-of-town. The bookkeeper, Mrs. Hall, brought the checks for signing to the one she thought appropriate for that purpose. As Mr. Cole explained, as far as Stanford Rowe was concerned, he was generally the check signing man and Mr. Latham would not have signed checks pertaining to Stanford Rowe without his authority. "There would be no reason for him to sign a check that was applicable to something we were doing in Stanford Rowe because he had nothing to do with Stanford Rowe. * * * The same way I would not sign a check for J.L.M. [Jet Lists] without his approval."

Neither party was able to to produce the entire financial records of Stanford Rowe or Jet Lists. However, that portion of the records which was available shows that plaintiff drew at least 17 checks on the bank account during the last half of 1980, totalling $48,060.55. While not all of the payees are identified, it is apparent from those identified in the record that the major part of that sum was used to pay for rental

of equipment used by Jet Lists and to purchase supplies for it.

Lewis Business Products brought a suit in a state court against plaintiff and Jet Lists complaining that plaintiff's activities with Jet Lists violated an employment agreement between Lewis and plaintiff. On October 23, 1980, the state court entered an injunction against both plaintiff and Jet Lists. The injunction prohibited plaintiff from engaging within the State of Florida or any other general area within a radius of 25 miles of any manufacturing plant or sales office operated by Lewis in the manufacture, distribution, solicitation or sale of any products or services sold by Lewis as of May 15, 1980. It also barred plaintiff from the manufacture, distribution, solicitation or sale of business forms, in any area, to any customers to whom Lewis sold any products or services within one year prior to May 15, 1980. And it further enjoined plaintiff and Jet Lists from soliciting any customers which Lewis had one year prior to May 15, 1980, for the manufacture, distribution, solicitation or sale of any products or services sold by Lewis to that customer. And it further enjoined the plaintiff and Jet Lists from the manufacture, distribution, solicitation or attempt to sell any products or services to any customers which Lewis had one year prior to May 15, 1980.

Plaintiff signed a letter dated October 23, 1980, stating that he was resigning as an officer, director and stockholder of Jet Lists as of October 23, 1980. But to some extent this appears to have been form rather than substance. Although he disposed of his stock in Jet Lists, he did so by transfer to his wife. Plaintiff also interpreted the injunction as not precluding his working for Stanford Rowe. He continued to be involved in the day-to-day management of Jet Lists as a division of Stanford Rowe, but without specific title. He continued to receive the same salary as before. He issued at least three checks totalling

$16,633 on the joint bank account. He may have rendered such additional incidental assistance to Stanford Rowe as was required in Cole's absence, but his authority over Stanford Rowe funds was not enlarged. Thus, plaintiff worked for Stanford Rowe and Jet Lists from April to October 23, 1980, and for Stanford Rowe until March 9, 1981, when he resigned in fact.

### Discussion

Plaintiff claims that he was not a "person" as used in § 6671, namely, an officer or employee of a corporation under a duty to account for and pay the taxes. Plaintiff's contention appears to be well taken with respect to Stanford Rowe, since he was not an officer of that corporation and no explicit agreement with any other officers or director delegated responsibility to him for such payment. Nor may we infer from the fact that plaintiff had check-writing authority on the joint account that he was under a duty to pay the creditors of Stanford Rowe, including the United States, since Mr. Cole testified that Cole alone was responsible for the operation of Stanford Rowe and "Latham had nothing to do with Stanford Rowe primarily."[1] *Cf. Godfrey v. United States*, 748 F.2d 1568, 1575–76 (Fed.Cir.1984).

However, the opposite is true with respect to Jet Lists. The record reflects that plaintiff was president of that corporation and that the only other officer was Mr. Cole, who was secretary-treasurer. Since a corporation acts through its officers, absent evidence to the contrary presumably the persons who are the sole officers with authority to make disbursements of corporate funds have the duty to carry out what the law requires of the corporation, namely, payment over to the government of trust funds withheld from the wages of its employees. *Bolding v. United States*, 215 Ct.Cl. 148, 159, 565 F.2d 663, 670 (1977);

1. This testimony by Cole may not reasonably be impugned on the theory that it served Cole's self-interest. Indeed, testimony that plaintiff was not under a duty to pay Stanford Rowe's withholding taxes makes it more likely that Cole will have to pay the penalty for such failure to pay Stanford Rowe's tax.

*Mazo v. United States*, 591 F.2d 1151, 1156 (5th Cir.), *cert. denied sub nom. Lattimore v. United States*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979); *Newsome v. United States*, 431 F.2d 742, 746 (5th Cir.1970).

Plaintiff attempts to circumvent this rule by claiming that Mr. Cole was more active with respect to financial affairs of both corporations than was he. This may be true with respect to Stanford Rowe, but the record does not reflect that it was true with respect to Jet Lists. In any event, it is of no consequence that Mr. Cole may also have been a responsible officer of Jet Lists, since, as the Court of Claims stated in *Bolding*, 215 Ct.Cl. at 161, 565 F.2d at 671:

> Section 6672 does not confine liability for unpaid taxes only to the single officer with the greatest or closest control or authority over corporate affairs. "Realistically read, [§ 6671(b)] encompasses all of those so connected with the corporation as to have the responsibility and authority to avoid the default which constitutes a violation of [§ 6672], even though liability may thus be imposed on more than one person." [Citations omitted.]

Plaintiff's claim that he was a mere figurehead is certainly not borne out with respect to Jet Lists. As already noted, plaintiff had authority to sign checks drawn on the joint corporate checking account. He and Mr. Cole jointly negotiated and signed the lease for the building in which both businesses operated. They jointly negotiated and signed the lease for the ink-jet printer rented by Jet Lists from Meade Digital Corporation. Plaintiff issued checks to Meade Digital for the equipment rental. Plaintiff and Mr. Cole jointly signed purchase agreements for a printer and cutter, two expensive pieces of equipment used in the printing operation. Plaintiff ordered supplies for Jet Lists and verified invoices from such suppliers. Plaintiff hired and supervised the employees of Jet Lists. Plaintiff and Mr. Cole set the prices for the joint product of Jet Lists and Stanford Rowe. Plaintiff and Mr. Cole each drew the same salary for his services, namely at the rate of $45,000 per year, plus expenses. Between July 16, 1980 and December 9, 1980, plaintiff signed 17 checks drawn on the combined checking account for both businesses, in the total amount of $48,060.55. After October 23, 1980, when plaintiff formally resigned from Jet Lists, he still signed three checks drawn on the joint corporate checking account in the total amount of $16,633. There were no restrictions on plaintiff's authority to sign or not sign checks. There was evidence that throughout the calendar quarters in issue plaintiff and Mr. Cole discussed the financial condition of Jet Lists.

Plaintiff contends that when he resigned his position from Jet Lists in response to the state court's injunction he no longer was responsible for the payment of the unpaid employment taxes. However, he could have paid such sums up to October 23, 1980, the date of his resignation; and, in any event, despite the resignation plaintiff still performed most of the same duties with respect to the operation of Jet Lists that he performed prior to his resignation and received the same salary.

Plaintiff contends and testified that during the quarters at issue and until December 1980, when he attended a meeting with a revenue agent, he was unaware of the unpaid employment tax liabilities of either or both corporations. This involves resolution of questions of credibility, for Mr. Latham's testimony is contradicted by that of Mr. Cole and Brian McCaffrey, the accountant for both businesses. Plaintiff contends that Mr. Cole's testimony should not be believed because he has also been assessed the penalty for the non-payment of the taxes and that to the extent plaintiff is held liable for the penalty, Cole will not have to pay. While Mr. Cole is an interested witness, so is the plaintiff. Having reexamined the testimony of Mr. Cole, I do not find in it necessary or even probable indicia of perjury. Moreover, he is corroborated by the testimony of Mr. McCaffrey. Both testified that McCaffrey apprised both plaintiff and Cole of the poor financial con-

dition of the corporations and of the unpaid employment taxes from the time of the first default, as early as June 30, 1980.

■ Having determined that, at least with respect to Jet Lists, plaintiff had a duty to truthfully account for and pay over the employment taxes and that he knew that during the quarters at issue Stanford Rowe was filing tax returns showing liability for the employment taxes of both Stanford Rowe and Jet Lists but failing to pay such taxes, the remaining question is as to whether plaintiff willfully breached his duty to pay over the taxes. In the case of a corporation which no longer has the funds to pay over the withholding taxes, it is sufficient to base the determination that an individual who was under a duty to pay over the taxes willfully failed to do so within the meaning of § 6672 on the fact that he knowingly used the funds in the operation of the business, most commonly by paying other creditors or himself in preference to the United States. *Godfrey v. United States*, 748 F.2d at 1576–77; *Bolding v. United States*, 215 Ct.Cl. 148, 161, 163, 565 F.2d 663, 671 (1977); *White v. United States*, 178 Ct.Cl. 765, 778, 372 F.2d 513, 521 (1967); *Scott v. United States*, 173 Ct.Cl. 650, 656, 354 F.2d 292, 296 (1965).

■ The forms 941 showing the combined tax liabilities of Stanford Rowe and Jet Lists for the second, third and fourth quarters of 1980 showed unpaid taxes of $28,238.40. During the same period plaintiff issued checks on the joint bank account totalling $48,060.55. However, the record fails to show how much of these tax liabilities was attributable to the employees of Jet Lists rather than those of Stanford Rowe. Similarly, the record fails to show how much of the $48,060.55 was derived from the funds of Jet Lists rather than of Stanford Rowe. For the first quarter of 1981 the form 941 indicates unpaid taxes due of $13,449. While plaintiff did not issue any checks on the joint bank account during this period, he conceded in his testimony that he continued to receive his salary at the rate of $45,000 per year every 2 weeks until he resigned in March 1981.

This would seem to indicate plaintiff received about $10–11,000 which more properly should have gone to the United States to pay the taxes withheld from employees. But similarly, the record does not reflect what portion of the $13,449 was attributable to withholding taxes of employees of Jet Lists rather than Stanford Rowe during this quarter, nor does it reflect whether the funds which were used to pay plaintiff's salary were those of Jet Lists or Stanford Rowe. Thus, while plaintiff may only be held accountable for failure to pay the taxes due from Jet Lists, the present record provides no basis for proper allocation thereof.

Since plaintiff has the burden of proof, (*United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); *Pototzky v. United States*, 8 Cl.Ct. 308, 315 (1985)), it could be argued that there is a failure of proof and plaintiff is not entitled to recover anything and is liable for the sum assessed against him. However, in view of the fact that neither party dealt with the possibility that plaintiff could be a responsible officer with respect to Jet Lists and not with respect to Stanford Rowe, it would be unfair to preclude the plaintiff from refund of and non-liability for such amounts as are not properly attributable to the non-payment of Jet Lists taxes. Accordingly, the parties are allowed 30 days in which to arrive at a stipulation of the proper allocation. If the parties are unable to do so, upon motion of either the case will be set for further trial to determine the proper amount of the judgment.