Robert WHITE
v.
The UNITED STATES.
No. 270-62.

United States Court of Claims.
Feb. 17, 1967.

Martin J. Welsh, Cleveland, Ohio, attorney of record, for plaintiff.

Leonard S. Togman, Washington, D. C., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant. Lyle M. Turner and Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

### PER CURIAM:

This case was referred to Trial Commissioner Franklin M. Stone with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on September 28, 1966. Plaintiff has filed no exceptions to or brief on this report and the time for so filing pursuant to the Rules of the court has expired. On November 10, 1966, the defendant filed a motion that the court adopt Trial Commissioner Stone's findings of fact, opinion and recommended conclusion of law as those of the court, to which plaintiff has filed no response and the time for so filing has expired. Since the court agrees with the trial commissioner's findings, opinion and recommended conclusion of law, as hereinafter set forth, it hereby adopts

the same as the basis for its judgment in this case without oral argument. Defendant's motion to adopt is granted, plaintiff is therefore not entitled to recover and the petition is dismissed.

### OPINION OF COMMISSIONER*

STONE, Commissioner:

Plaintiff seeks in this action to recover refund of Federal employment tax penalties assessed against him by the Commissioner of Internal Revenue and paid by plaintiff, as a result of the failure of the White Plumbing Company, Inc. (hereinafter sometimes referred to as "the corporation") to pay over to the Government certain Federal income and F.I.C.A. taxes withheld from wages paid to employees of the corporation during the last quarter of 1956 and the first two quarters of 1957. Two questions are presented for decision: (1) whether plaintiff was a "person" under a duty to "collect" and "pay over" to the Government, Federal and F.I.C.A. taxes withheld, within the meaning of sections 6671(b) and 6672 of the Internal Revenue Code of 1954, 26 U.S.C. § 6672 (1958), and (2) whether plaintiff "willfully" failed to take either of the actions outlined in (1), within the meaning of section 6672 of the Internal Revenue Code of 1954, supra.

White Plumbing Company, Inc., was incorporated in the state of Ohio on May 7, 1956, and ceased active operation in the latter part of July, 1957. The board of directors was made up of the three stockholders of the corporation, who owned the following proportions of stock:

Robert White (plaintiff)   50 per cent
Nicholas Paglia            25 per cent
Louis Corsi                25 per cent

During the existence of the corporation, plaintiff was president of the corporation and he was authorized by the corporation's code of regulations to exercise, subject to the control of the board of directors and the stockholders, general supervision over the affairs of the

* The opinion, findings of fact and recommended conclusion of law are submitted under the order of reference and Rule 57 (a).

corporation. Louis Corsi held the office of secretary-treasurer, and at the same time he was employed on a full-time basis as an attorney for the City of Cleveland, Ohio. The signatures of both plaintiff and Corsi were required on all checks drawn on the corporation's regular commercial bank account and its payroll account.

While plaintiff devoted most of his time to outside plumbing work, he actively conducted the day to day operations of the business, which during the first few months, was run from a barn next to his home. Plaintiff's residence address was used for receiving most business mail, except tax correspondence, including, among other items, bills and bank statements. Plaintiff came to the office daily, hired and laid-off all the employees, ordered materials and supplies, opened mail from suppliers and examined bills sent in by them, set the price of jobs, negotiated all contracts with customers, prepared invoices, disbursed corporate funds by issuing checks cosigned by him and Corsi in payment of suppliers' bills and other business expenses, and deposited the business receipts in the corporation's bank account. He received a salary of $150 per week from the corporation.

Around October 1, 1956, the business was moved to a new, permanent location called the "store" and plaintiff hired Mrs. Frances Oberdick as the firm's bookkeeper and office girl. Until this time, Corsi had performed the bookkeeping work at his home and prepared all county, state and Federal tax returns for the corporation. The tax notices and returns were sent directly to Corsi's residence until some time after the business moved its operations to the new site. Tax notices and return forms received by Corsi at his home subsequent to that time were taken to the corporation's business office and left there by him. After Mrs. Oberdick was employed, Corsi took all the bookkeeping records in his possession to the store, showed her how to use them, and thereafter Mrs. Oberdick assumed all of the routine office and bookkeeping duties previously discharged by Corsi, including the preparation and mailing of Federal income tax returns, which Corsi checked for correctness before instructing that they be sent to the Internal Revenue Service along with checks in payment thereof. Corsi was not paid a salary for his services. No Federal withholding tax returns were ever prepared or filed by plaintiff (which fact is qualified to the extent indicated in footnote 2 * of the findings), nor did he ever give any tax returns to Mrs. Oberdick to complete.

For a short time after the corporation's operations were moved early in October 1956, Corsi went to the business office about once every week or ten days. Thereafter, his visits became increasingly infrequent. While at the store, he limited his activities almost entirely to reviewing tax returns prepared by Mrs. Oberdick and signing blank corporate checks, which he gave to plaintiff to use in paying financial obligations of the corporation. These presigned blank checks were completed by plaintiff or by Mrs. Oberdick at the direction of plaintiff (and occasionally at the direction of Corsi). All checks, including those in payment of taxes, which were prepared and sent out by Mrs. Oberdick at the direction of Corsi, were written with plaintiff's knowledge. Plaintiff paid most of the bills received and expenses incurred by the corporation with checks presigned in blank by Corsi. Suppliers who were not paid went to plaintiff for payment, and he would promise them payment as soon as possible. Plaintiff directed Mrs. Oberdick in the preparation of the payroll, signed the payroll checks already presigned by Corsi, and paid the employees himself.

The corporation withheld from wages paid to its employees during the third quarter of 1956 and the first two quar-

2*. This fact is qualified to the extent that it appears a representative of the Internal Revenue Service prepared a return for the third quarter of 1957, covering a period of employment of about two weeks in that period which plaintiff signed.

ters of 1957, certain amounts with respect to Federal income and F.I.C.A. taxes. These amounts were reported to the Government on corporate withholding tax Forms 941, prepared and filed by Mrs. Oberdick at Corsi's direction, for the quarters ending September 30, 1956, March 31, 1957, and June 30, 1957. The taxes for these quarters had not been paid by the due date and were still owing when the corporation ceased active operation in July 1957. During the period when plaintiff knew that these taxes were owing, and could have paid them with checks presigned by Corsi and given to him, he chose, instead, to make payments to other creditors so that he could continue to carry on the business.

I. *Was plaintiff a "person" under a duty to "collect" and "pay over" income and F.I.C.A. taxes withheld, within the meaning of sections 6671(b) and 6672 of the Internal Revenue Code of 1954?*

Sections 6671(b) and 6672 of the Internal Revenue Code of 1954, supra, are so interrelated that they must be read and considered together in resolving the questions raised in this case.[1]

Section 6671(b) of the code provides:

RULES FOR APPLICATION OF ASSESSABLE PENALTIES

\* \* \* \* \* \*

(b) *Person Defined.*—The term "person", as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs. [26 U.S.C. § 6671(b) (1958).]

Section 6672 of the code provides:

FAILURE TO COLLECT AND PAY OVER TAX, OR ATTEMPT TO EVADE OR DEFEAT TAX

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable. [26 U.S.C. § 6672 (1958).]

▪▪ The purpose of the section is to permit the taxing authority to reach those responsible for the corporation's failure to pay the taxes which are owing. Dillard v. Patterson, 326 F.2d 302 (5th Cir. 1963); United States v. Graham, 309 F.2d 210 (9th Cir. 1962). Accordingly, the section is generally understood to encompass all those officers who are so connected with a corporation as to have the responsibility and authority to avoid the default which constitutes a violation of the particular Internal Revenue Code section or sections involved, even though liability may thus be enforced on more than one person. See Linda Scott v. United States, 354 F.2d 292, 296, 173 Ct.Cl. 650 (1965), citing Scherer v. United States, 228 F.Supp. 168, 170 (D.C.Idaho 1963).

▪ In reaching a determination with respect to the person or persons upon whom to impose responsibility and liability for the failure to pay taxes, the courts tend to disregard the mechanical functions of the various corporate officers and instead emphasize where the ultimate authority for the decision not to pay the tax lies. For this reason, as the Government points out in its brief, a responsible person is most frequently defined as a person who has "the final word as to what bills or creditors should or should not be paid and when." To that effect, see, e. g., United States v. Graham, supra; Bloom v. United States, 272 F.2d 215 (9th Cir. 1959), cert.

---

1. In view of this fact, it should be understood that unless otherwise specifically stated, references hereinafter to these sections in the singular mean both sections considered as a whole.

denied, 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146 (1960); Sherwood v. United States, 246 F.Supp. 502 (E.D.N.Y. 1965); Neale v. United States, 13 A.F. T.R.2d 1721 (D.Kan.1964); Kolberg v. United States, 13 A.F.T.R.2d 1615 (D. Ariz.1964); Schweitzer v. United States, 193 F.Supp. 309 (D.Nebr.1961).

In the instant case it is clear that plaintiff had the ultimate authority to decide which creditors to pay and when. His signature (as well as Corsi's) was required on all corporate checks. Although Corsi may have directed Mrs. Oberdick to write out a few checks signed in blank by plaintiff in payment of suppliers' bills, most, if not all, of such checks were written by plaintiff or Mrs. Oberdick at plaintiff's direction. Testimony was presented that plaintiff and Corsi generally discussed bills received for the purpose of determining the order in which they should be paid, particularly during the first few months of the corporation's existence. However, it is clear from the record that plaintiff paid most of the bills received, and expenses incurred, by the corporation with checks presigned in blank by Corsi, and that from time to time plaintiff paid many of these bills without clearing them with Corsi.

Since the courts are looking for the person who could have seen to it that the taxes were paid, sometimes they just speak more generally about general policy-making authority or fiscal control, instead of pointing more explicitly to authority to direct payment of creditors. Thus, in United States v. Strebler, 313 F.2d 402 (8th Cir. 1963), the court decided that the corporation's president was the person responsible for collecting and paying over taxes withheld because he had the authority to act, and did act, as fiscal manager of that company's affairs, and exercised authority over the general policy, affairs, and finances of the corporation.

Both approaches would seem to amount to the same thing—a search for a person with ultimate authority over expenditures of funds since such a person can

fairly be said to be responsible for the corporation's failure to pay over its taxes. In Bloom v. United States, supra, the court tied the two together in holding the president of the corporation involved there to be the responsible person, since he was in charge of the entire operation, made the final decisions, and decided what creditors were, or were not, to be paid.

It is apparent from the facts in this case that plaintiff, as chief executive officer and general manager, exercised general supervision over the affairs of the corporation and was the source of the final policy and fiscal decisions. As noted heretofore, he set the prices, negotiated the contracts, billed the customers, hired, laid-off and paid the employees, ordered the materials and supplies, paid the creditors and signed all corporate checks.

Plaintiff contends that he was not the person responsible for the payment of taxes to the Government because Corsi was the responsible person, or at least because Corsi had too much authority in this area to leave plaintiff responsible. Though not explicitly stated, plaintiff might be implying that there can only be one responsible person charged with the duty of paying taxes. He points to the fact that he did not prepare the company tax returns or keep the books and records. However, the courts have not required a person to perform these functions in order to be the responsible person. In Neale v. United States, supra, the court instructed the jury that if a person has knowledge that taxes were not being paid by the corporation and has the final word as to what bills to pay or not to pay, then he is a responsible person, regardless of whether he does the actual mechanical work of keeping records, preparing returns, or writing checks.

It has also been stated that as long as a person has the ultimate authority to determine what bills to pay, he may be the responsible person, even though he is not the *actual disbursing officer* who mechanically receives and pays out

corporate funds. Kolberg v. United States, supra; Bloom v. United States, supra.

In United States v. Graham, supra, the court held that a retrial was necessary, where the trial court had decided the taxpayer was not a responsible person on the narrow ground that he did not actually collect, receive, or prepare tax returns or pay taxes. Citing Wilson v. United States, 250 F.2d 312, 316 (9th Cir. 1957), the court stated that "The question is simply whether the board of directors 'had the final word as to what bills should or should not be paid, and when'", and concluded that "It would make little sense to confine liability to those performing the mere mechanical functions of collection and payment when such functions are performed simply in accordance with the executive judgment of others whose duty it is to decide for the corporation in this area." (309 F. 2d at 212.)

In Bloom v. United States, supra, the plaintiff, who was the president and chief executive officer of the corporation, was unsuccessful in persuading the court that he was not the responsible officer because of the following circumstances: He rarely went into the corporation's principal office; subordinates were in charge of the principal office, exercised the functions of general manager and were authorized to sign checks for the corporation; and he relied upon the corporation's bookkeeper and accountant insofar as the financial records and tax returns were concerned. The court instead relied upon other testimony establishing that he oversaw the entire operation and made the final decisions concerning the payment of creditors.

An even stronger case is Schweitzer v. United States, supra, where the plaintiff taxpayer, as president, chief executive officer, majority shareholder and chairman of the board, was found to be the responsible person, despite his minimal contacts with the operation of the business. There the taxpayer devoted all his time to another business, and left the active management of the corporation to another officer who prepared all reports and all tax returns, signed practically all the checks, directed payments of bills, and supervised employees. The taxpayer visited the office no more than once a week and occasionally conferred by phone with the officer in charge. Nevertheless, the court held the taxpayer was a person under a duty to collect and pay over the taxes because, as president and chief executive officer, he had authority under the articles of incorporation to determine what bills would and would not be paid and had authority to direct the payment of the taxes.

Similarly, in Belcher v. United States, 6 A.F.T.R.2d 5495 (W.D.Va.1960), delegation of authority by the president of the corporation did not relieve him from the penalty. Plaintiff there was the outside man who devoted all his time to the production and selling side of the business, and delegated all the clerical work to the bookkeeper, including the duty of preparing all the corporate tax returns, making up payroll and deducting withholding and F.I.C.A. taxes, preparing checks for the plaintiff's signature, and buying for the company store.

The aforementioned cases go much further than is necessary to find plaintiff in the instant case the responsible party. In contrast to the minimal functions carried on in some of the above-cited cases, the plaintiff personally exercised the powers and duties specified in finding 8, infra and was the *de facto* chief disbursing officer.

The cases hold not only that it is unnecessary for an individual to have the sole authority over all corporate affairs, but also that more than one individual may be a responsible person. In Scott v. United States, supra, where the taxpayer, who was a director and secretary-treasurer of the corporation, was held to be a responsible person, the court said:

It is inconsequential that exclusive control over all corporate affairs was not vested in him, or that the corporation's president retained a considerable measure of decision-making discretion. Section 2707(d) [now 6672]

is not so phrased or designed as to exclude one corporate officer from its sanction merely because it might also be held to extend to another. Realistically read, the subsection encompasses all those who are so connected with a corporation as to have the responsibility and authority to avoid the default which constitutes a violation of § 2707(a) [now 6672], even though liability may thus be imposed on more than one person. [354 F.2d at 296.] Similar statements can be found in United States v. Graham, supra, and Kolberg v. United States, supra.

In Scherer v. United States, supra, two corporate officers were found to be responsible officers and liable for the penalty. One was secretary-treasurer, and the other was president. The court relied upon the fact that both were active members of the board of directors with whom the ultimate authority of the corporation rested, that the board followed any advice given by them, and that in reality they were running the corporation. The court stated that whether or not the board had or had not delegated control of the payment of the tax debt to these two officers and directors of the corporation, they actually controlled the matter of payment or nonpayment of the tax generally, and were therefore responsible.

Considering the foregoing and the entire record, it is concluded that any responsibility Corsi may have in regard to collecting and paying over the income and F.I.C.A. taxes withheld would not prevent plaintiff from being held liable for the penalty as a responsible person under the statute.

To counter the effect of the cases cited by defendant in support of its position that plaintiff was a "responsible person," plaintiff cites Bellah v. Patterson, 197 F.Supp. 522 (N.D.Ala.1961); Carroll v. United States, 5 A.F.T.R.2d 523 (E.D.Wash.1960); and Wiggins v. United States, 188 F.Supp. 374 (E.D.Tenn. 1960).

As defendant notes, Bellah v. Patterson, supra, is miscited by the plaintiff.

There the court held only that plaintiff's failure to act as to the unpaid taxes was not willful, and it did not reach the question of whether plaintiff was a responsible person.

However, there are several cases which indicate that the president of a corporation can relieve himself of the responsibility for paying over withheld income and F.I.C.A. taxes by delegating his authority. In Wiggins v. United States, supra, the taxpayer, president-treasurer of the corporation, had delegated to the bookkeeper all the duties of keeping up with the bills and obligations of the corporation and depended upon him for the payment of all these obligations. In addition to finding the requisite willfulness absent, the court stated that "having delegated to the bookkeeper the duties of keeping up with obligations and the payment thereof, it is quite doubtful that he is a 'person' under the provisions of this statute." (188 F.Supp. at 376.)

In Carroll v. United States, supra, the court found that the president was not an officer who was under a duty to collect and pay over withholding and F.I.C.A. taxes to the United States, since he was an "outside" man and had nothing to do with the books of the corporation, which duties had been delegated to others.

In Cushman v. Wood, 149 F.Supp. 644 (D.Ariz.1956), the court found that the plaintiffs, husband and wife, who were president and vice president, respectively, of a corporation, were not responsible persons where they were not disbursing officers, and the tax returns were prepared by the accountant and presented to the general manager together with a check.

While the three cases discussed above, i. e. *Wiggins, Carroll,* and *Cushman,* may be somewhat in conflict with the spirit of the previously cited cases as to the extent to which the chief executive officer of a corporation can relieve himself of responsibility for paying taxes owed, by delegating such duty, it is not necessary to choose between these two

lines of cases, since the said three cases are factually distinguishable from the instant case.

In *Wiggins*, the taxpayer had delegated to the bookkeeper the ultimate control over the payment of creditors and no longer exercised that control himself. In contrast, White, the plaintiff here, still personally controlled the payment of creditors.

In *Carroll*, the taxpayer had completely delegated all financial duties to others and was concerned with only the construction aspect of the business. The court found that each of the officers had specific duties and plaintiff was an outside man in charge of construction jobs only. In contrast, White maintained many financial duties: He examined and paid corporate bills, signed all the corporation's checks, deposited corporate receipts, and directed the preparation of the payroll.

Finally, *Cushman* was a case where the plaintiffs had delegated the ultimate control of corporate management to others and did not participate in any way in the nonpayment action. White, on the other hand, actively controlled the corporation at all times and had it within his power to have the tax returns sent in along with checks presigned and given to him by Corosi; but he chose not to do so.

Two other factors might be mentioned which have been emphasized by the courts in deciding whether an individual is a person responsible for collecting and paying over the tax: (1) ultimate authority over employees pay, Flan v. United States, 326 F.2d 356 (7th Cir. 1964); Ponkey v. Campbell, 9 A.F.T.R.2d 780 (N.D.Tex.1961); and (2) authority to sign checks Kaufman v. Scanlon, 245 F. Supp. 352 (E.D.N.Y.1965); Lowe v. United States, 224 F.Supp. 569 (S.D. Tex.1963).

In Flan v. United States, supra, the court found plaintiff was a responsible officer of the Oakton corporation where he "had the ultimate authority over paying the salaries of Oakton employees as well as Oakton's other activities." (326 F.2d 358.)

In Ponkey v. Campbell, supra, the court instructed the jury that if the plaintiff was not authorized to handle the payroll and pay the wages of the employees, he was not a "responsible person."

The plaintiff found liable for the penalty in Kaufman v. Scanlon, supra, was a person placed in the corporation to safeguard the investment of a lending institution and directed to countersign checks. The court reasoned that since he was authorized to countersign checks, he could have prevented diversion of corporate funds from tax payment had he so desired.

Under the views of *Flan*, *Ponkey*, and *Kaufman*, mentioned above, plaintiff in the instant case would be a responsible person, since he directed the preparation of the payroll, signed all checks, and paid the employees.

The courts often rely on a combination of the factors discussed so far in determining whether an individual is a responsible person within the meaning of the sections of the Internal Revenue Code of 1954 involved here. In Scott v. United States, supra, the only Court of Claims precedent on this issue, the court mentioned two factors which are particularly applicable in this case: (1) the authority to draw checks on the corporate bank account, and (2) the authority to make decisions respecting financial difficulties arising in the ordinary course of the business.

■ In sum, the authority, powers and duties exercised by plaintiff in the instant case and recounted in the findings herein are more than sufficient to constitute him a responsible person within the meaning of the statute.

II. *Did plaintiff "willfully" fail to pay over to the Government Federal income and F.I.C.A. taxes within the meaning of section 6672 of the Internal Revenue Code of 1954?*

Having found that plaintiff was a person required to collect and pay over the

taxes, the remaining question is whether his failure to pay over such taxes was "willful."

The Government contends that "willfully," as used in section 6672, supra, means a deliberate choice voluntarily, consciously and intentionally made to pay other creditors instead of paying the Government, and that it is not necessary that there be present an intent to defraud or to deprive the United States of the taxes due, nor need bad motives or wicked design be proved in order to constitute willfulness. The cases cited by the Government amply support this contention. See, e. g., Scott v. United States, Dillard v. Patterson, Flan v. United States, Bloom v. United States, Sherwood v. United States, Kolberg v. United States, Neale v. United States, Ponkey v. Campbell, all supra; also see Horwitz v. United States, 236 F.Supp. 812 (1964), aff'd. per curiam, 339 F.2d 877 (2d Cir. 1965); United States v. Childress, 13 A.F.T.R.2d 1690 (M.D.Fla.1964); Tiffany v. United States, 228 F.Supp. 700 (D.N.J.1963).

Plaintiff does not refute the above contention. Instead he asserts that this rule does not apply here because (1) plaintiff has not been shown to be the disbursing officer, and (2) it took two signatures on each check and one of those signatures had to be Corsi's. The first contention must fail in light of the fact that the record considered as a whole shows that plaintiff was the chief disbursing officer. The second contention is true, but does not make plaintiff's action any less willful. The only issue is whether he voluntarily and knowingly preferred other creditors over the Government, and it is irrelevant whether Corsi was also a party to this willful conduct or shared responsibility.

The cases cited by plaintiff are also in accord with the Government's definition of willfulness. As indicated hereinbefore, in Wiggins v. United States, supra, the taxpayer had delegated to a bookkeeper the duties of paying creditors and other obligations, and depended upon the bookkeeper to carry out these duties.

Therefore, the court found that the taxpayer had not acted willfully since the evidence failed to prove that the plaintiff knew about the obligation to the Government at the time other creditors were being paid. To the same effect is Schweitzer v. United States, supra, and Bellah v. Patterson, supra.

Belcher v. United States, supra, involved two brothers who held the offices of president and vice president. The vice president, who was totally inactive because he spent all his time running another corporation, was found not to be a responsible person. The president was determined to be a "responsible person" but his failure to collect and pay over the taxes was found to be not willful. He relied upon the bookkeeper to perform all the clerical duties, including preparing the tax returns, and deducting and paying the taxes in question. The bookkeeper not only failed to pay the taxes, but he concealed this failure from the plaintiff in that case.

In Levy v. United States, 140 F.Supp. 834 (W.D.La.1956), the manager-bookkeeper had failed to follow the taxpayer's instructions as to payment of the withholding taxes. The court held that the requisite willfulness was absent, since the plaintiff did not know that the taxes in question were due and unpaid, and that mere negligence in failing to ascertain the facts is not enough to constitute willfulness.

The facts mentioned and cases cited by plaintiff indicate a contention on his part that he did not act willfully because he was unaware of the tax obligation. Contrary to this contention, however, it has been found that plaintiff voluntarily, consciously, and intentionally made a deliberate choice to pay other creditors instead of paying these taxes to the Government, and that he willfully accorded certain creditors preferential treatment when he paid their bills instead of paying or maintaining a reserve of funds with which to pay taxes owing the Government.

Since it has been found that the evidence will not justify a finding that

plaintiff *intended* to defraud or deprive the Government of the taxes in question, plaintiff could have cited the definition of willfulness found in Cushman v. Wood, supra. In contrast to the cases cited by defendant, this case held that in the context of section 6672, supra, "willfulness" is used to characterize purpose or motive, as distinquished from knowledge and intention, and that the basic elements of willfulness are evil motive, lack of justification, bad purpose, or something done without reasonable cause. However, this definition has been rejected by nearly every case in which said issue has been considered. See, e. g., Dillard v. Patterson, supra, Flan v. United States, supra, Bloom v. United States, supra, as well as the only Court of Claims case to consider the issue, i. e., Scott v. United States, supra.

The only part of the *Cushman* decision that has any support elsewhere is the indication that willfulness requires action without reasonable cause. In Kellems v. United States, 97 F.Supp. 681 (D.Conn.1951), the plaintiffs intentionally and deliberately refused to withhold and pay over the income taxes accruing against their employees on the ground that they believed the Withholding Act was unconstitutional and void. The court stated that willfulness means without reasonable cause, and found that the plaintiffs did not have reasonable cause for noncompliance because they did not do as much to verify their opinions that the Act was unconstitutional as reasonably prudent men would have done.

In Gray Line Co. v. Granquist, 237 F.2d 390 (9th Cir. 1956), cert. denied 353 U.S. 911, 77 S.Ct. 667, 1 L.Ed.2d 664 (1957), the court held that the penalty does not lie where the failure to pay was conscious and intentional but motivated by reasonable cause. The reasonable cause in that case was reliance on advice of counsel that taxes were not due.

In Frazier v. United States, 304 F.2d 528 (5th Cir. 1962), the court indicated that it was of the opinion that "without reasonable cause" as used in the *Grandquist* and *Kellems* cases is part of the test for willfulness, but the actual holding of the court was stated in the following words:

> For the present we need only hold that in a civil case where a responsible officer paid employees their net wages at a time when the corporation had insufficient funds to cover the taxes thereon and, when such funds became available, preferred subsequent creditors over the United States, knowing at all times his obligation to pay such taxes, his failure to pay was "without reasonable cause" and "willful" within the meaning of section 6672. [304 F.2d at 530]

The *Cushman, Kellems, Gray Line Co.,* and *Frazier* cases, mentioned above, are the only ones found in conducting research of the question of "willfulness" that require action without reasonable cause. If lack of reasonable cause is a part of the test for willfulness, it is limited to such unusual situations as existed in the *Gray Line* and *Kellems* cases, and is of no help to the plaintiff here.

■ On the basis of the foregoing and the entire record, it is concluded that plaintiff was a person under a duty to collect and pay over the disputed taxes, and willfully, i. e., voluntarily, consciously and intentionally, failed to do so. Therefore, judgment should be entered for the defendant and plaintiff's petition dismissed.