W. Andrew SALE, pro se, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 92–644T.

United States Court of Federal Claims.

Aug. 2, 1994.

Reissued Aug. 24, 1994*.

* This opinion was originally issued without publication. Defendant moved for publication. For good cause shown, the motion is granted.

728

W. Andrew Sale, pro se plaintiff.

Bartholomew Cirenza, Washington, DC, with whom was Asst. Atty. Gen. Loretta C. Argrett, for defendant; Mildred L. Seidman and Thomas D. Sykes, of counsel.

## OPINION

FUTEY, Judge.

Plaintiff, W. Andrew Sale, *pro se*, brings this tax refund action to recover $5,725.43, plus interest from the date of withholding, in overpaid income taxes for the 1986 tax year. The Internal Revenue Service (IRS) applied these overpaid taxes to satisfy an assessment for restricted interest[1] that had accrued from June 13, 1988, through January 26, 1990, on a 100 percent penalty assessment

pursuant to section 6672 of the Internal Revenue Code (I.R.C.), 26 U.S.C. § 6672(a) (1954). Defendant, the United States, denies that the IRS wrongfully assessed a penalty against plaintiff and has filed a motion for summary judgment pursuant to RCFC 56.

### Factual Background

Peter Pirsch & Sons Co., Inc. (Pirsch), founded in 1857 and headquartered in Kenosha, Wisconsin, was a manufacturer of fire trucks and fire truck equipment. Plaintiff first began to work for Pirsch in 1964. During 1971, plaintiff became a sales and administrative assistant as well as the corporate secretary of Pirsch. From 1972 through 1978, plaintiff's duties and responsibilities at Pirsch increased, and eventually he became a member of the board of directors. Subsequently, plaintiff was elected as president and treasurer of Pirsch. During the period in suit, plaintiff was the president, treasurer, and chairman of the board of directors of Pirsch.

Plaintiff also owned a significant percentage of the 22,368 outstanding shares of Pirsch common stock. As of September 30, 1986, plaintiff held 11,631 shares or 52 percent of the Pirsch common stock. On October 10, 1986, plaintiff acquired an additional 5,000 shares of Pirsch stock from his mother in partial consideration for the transfer by plaintiff of the deed to his personal residence. Pirsch's 1986 tax return, filed with the IRS on September 16, 1988, indicates that plaintiff was a 74 percent shareholder of the corporation as of December 31, 1986.[2]

As the president, treasurer, chairman of the board, and majority shareholder, plaintiff largely controlled Pirsch's corporate activities and operations. For example, plaintiff exercised authority over which creditors were to be paid and when such payments were to be made. Plaintiff was the only

---

1. Rev.Proc. 60–17, 1960–2 C.B. 942, defines "restricted interest" as "special provisions in the law which limit or prohibit interest under certain circumstances." Here, restricted interest may be imposed only for the period from the date of the notice and demand to the date of payment. *See* I.R.C. § 6601(e)(2)(A).

2. During oral argument, plaintiff challenged defendant's assertion that he possessed a majority of the outstanding Pirsch common stock during the period in suit. However, the overwhelming evidence submitted to this court by defendant, including documents prepared by plaintiff, indicates that plaintiff was in fact the majority shareholder of Pirsch from at least September 30, 1986, until December 31, 1986.

individual designated to sign checks, drafts, notes, bills, certificates of deposit, and other orders for payment or withdrawal of money. In addition, plaintiff alone maintained the authority to borrow funds on behalf of the corporation.

In 1983, plaintiff hired Lawrence C. Adams to serve as the controller of Pirsch. Adams' duties included oversight of accounts receivable and accounts payable, and maintaining daily cash bank balances. On June 18, 1986, Adams was forced to resign due to illness. After Adams' resignation, Pirsch's assistant to the controller, Michael Cuccia, assumed Adams' duties and served as the acting controller at Pirsch. During this time, Cuccia prepared monthly cash flow statements for plaintiff. In this way, plaintiff kept well informed of Pirsch's financial situation.

By early 1986, Pirsch began to experience a serious cash flow problem. Plaintiff stated in his deposition that this problem stemmed from an unfavorable judgment in a major personal injury lawsuit as well as the resignation of Pirsch's controller, Lawrence Adams, on June 18, 1986. In addition, Pirsch's primary lender, M & I Bank of Racine, informed plaintiff during the first quarter of 1986 that it had decided not to renew Pirsch's accounts receivable financing. By the third quarter of 1986, Pirsch's corporate creditors also began pressuring plaintiff to satisfy the debts accrued by Pirsch. During this time, plaintiff met frequently with Edward Von Housen, the senior credit manager at the Milwaukee branch of M & I Bank. These meetings were necessary because Pirsch had begun to write checks that exceeded the balance maintained in the corporate checking account. Accordingly, M & I Bank implemented a policy whereby plaintiff's written authority was required to honor any checks drawn on the Pirsch checking account. Thus, plaintiff became the sole Pirsch employee with the authority to determine which creditors were to be paid.

By the beginning of the third quarter of 1986, plaintiff was aware that employment taxes withheld from Pirsch's employees were not being paid to the IRS. Yet plaintiff took no action to remedy the situation. Rather, plaintiff attempted to postpone payment of the withheld taxes to the IRS so that other creditors could be paid. Furthermore, Pirsch's controller, Michael Cuccia, alleged in his deposition that plaintiff explicitly directed him to refrain from paying the withheld taxes.

On September 29, 1986, plaintiff filed a petition for bankruptcy on behalf of Pirsch in the United States Bankruptcy Court for the Eastern District of Wisconsin under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 1101 *et seq* (1982). On February 23, 1987, the IRS filed a "Proof of Claim for Internal Revenue Taxes" (Form 6338(C)). As amended on April 16, 1987, this claim included an unsecured priority claim totalling $35,014.27. Of that amount, $33,277.78 represented the unpaid Pirsch "trust fund"[3] taxes for the period ending September 30, 1986. By June 13, 1988, this claim had not yet been satisfied, and the IRS assessed a 100 percent penalty against plaintiff pursuant to I.R.C. § 6672.

On January 10, 1990, Ralph C. Anzivino, the trustee in bankruptcy for Pirsch, fully paid the unsecured priority claims on the IRS's amended proof of claim. That payment was received on January 26, 1990, and a credit representing the unpaid trust fund taxes for $33,277.78 was applied against plaintiff's 100 percent penalty assessment. On August 13, 1990, the IRS entered an additional assessment against plaintiff, totalling $5,725.43, for restricted interest on plaintiff's 100 percent penalty assessment from June 13, 1988 (date of initial assessment), through January 26, 1990 (date of payment of unsecured priority claim). On the same day, the IRS applied $5,725.43 in overpaid taxes from plaintiff's 1986 income tax account against the 100 percent penalty assessment, thereby placing the 100 percent penalty account into a fully paid status.

On August 27, 1990, the IRS received an informal claim for refund from plaintiff. This claim was fully disallowed on September

---

**3.** Whenever an individual is required to withhold any internal revenue tax on behalf of a corporation and to pay over such tax to the United States, the amount of the withheld tax must be held in a special fund in trust for the United States. I.R.C. § 7501(a).

17, 1990. On September 16, 1992, plaintiff filed a tax refund suit in this court demanding refund of the $5,724.43 in assessed interest which had been paid. In accordance with the court's September 22, 1992, order, plaintiff amended his complaint on October 21, 1992, to allege facts concerning his administrative claim for refund.

On October 25, 1993, defendant filed a motion for summary judgment alleging that plaintiff's complaint raised no issues of material fact. Oral argument on defendant's motion was held on June 15, 1994.

### Summary Judgment

Summary judgment is an integral part of the federal rules. It is designed to "secure the just, speedy and inexpensive determination of an action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) (*quoting* Fed.R.Civ.P. 1). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56; *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). A fact is considered material if it might significantly affect the outcome of the suit under the governing law. *Id.* at 248, 106 S.Ct. at 2510.

The party moving for summary judgment bears the initial burden of either demonstrating the absence of any genuine issue of material fact or the absence of evidence to support the non-movant's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553. If the moving party demonstrates an absence of genuine issues of material fact, then the burden shifts to the non-moving party to show that a genuine factual dispute does exist. *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed.Cir.1987). Alternatively, if the moving party can show that there is an absence of evidence to support the non-moving party's case, then the burden shifts to the non-moving party to proffer such evidence. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553. The court must resolve any doubts over factual issues in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158,

163 (Fed.Cir.1985), to whom the benefit of all presumptions and inferences run. *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). Plaintiff opposes this motion for summary judgment on the ground that there are genuine issues of material fact as to the imposition of the 100 percent penalty assessment.

### Discussion

In accordance with I.R.C. §§ 3102 and 3402, employers are required to withhold Federal Insurance Contributions Act (F.I.C.A.) taxes and federal income taxes from their employee's wages. I.R.C. § 7501(a) necessitates that these withheld monies be placed in a trust fund for the United States.

The Internal Revenue Code imposes personal liability upon persons responsible for overseeing the collection of taxes in instances where the taxes are not paid to the government. I.R.C. § 6672 permits the IRS to assess a penalty against "any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof ..." I.R.C. § 6672(a).

The term "person" as used in I.R.C. § 6672 is defined in I.R.C. § 6671 to include any "officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform in respect of which the violation occurs." I.R.C. § 6671(b).

■ Thus, for an individual to be subject to a 100 percent penalty, he/she must satisfy two criteria. First, that individual must be a "responsible person," as defined in I.R.C. § 6671(b), under a duty to collect, truthfully account for, and pay over the taxes as specified in I.R.C. § 6672. Second, the responsible person must have acted "willfully" in not complying with this duty. If both the responsible person requirement and the willfulness requirement are satisfied, then a 100 percent penalty may be properly imposed on

the individual by the IRS. *Dougherty v. United States,* 18 Cl.Ct. 335, 339–340 (1989), *aff'd,* 914 F.2d 271 (Fed.Cir.1990); *McCarty v. United States,* 194 Ct.Cl. 42, 53–54, 437 F.2d 961, 967 (1971).

## I. *Responsible Person*

■ Whether a person is responsible and has willfully failed to carry out his/her duty to ensure that the corporation collects, truthfully accounts for, and pays over the federal employment taxes depends on the specific circumstances of the case. *Dougherty,* 18 Cl.Ct. at 340; *Bauer v. United States,* 543 F.2d 142, 211 Ct.Cl. 276, 285–286 (1976). "Liability is not limited to those who perform the merely mechanical function of preparing tax forms, collecting the taxes from the wages of the employees, and filing the returns." *Feist v. United States,* 607 F.2d 954, 221 Ct.Cl. 531, 539 (1979) (citations omitted); *see also United States v. Graham,* 309 F.2d 210 (9th Cir.1962). "In many instances, the employees with responsibility for performing the clerical duties of collecting and paying over the taxes and preparing the returns do not have the authority to authorize the payment or to order the nonpayment of the tax." *Feist,* 607 F.2d 954, 221 Ct.Cl. at 539. Ultimately, the court must "cut through the organizational form and impose liability upon those actually responsible for an employer's failure to withhold and pay over the tax." *Godfrey v. United States,* 748 F.2d 1568, 1574 (Fed.Cir.1984) (*quoting Pacific National Insurance Co. v. United States,* 422 F.2d 26, 31 and n. 12 (9th Cir.1970)).

■ This court has defined a "responsible person" as "any corporate officer or employee ... [who] has the power and authority to avoid a default in the payment of a tax ... or the power to direct the payment of a tax." *Farris v. United States,* 4. Cl.Ct. 633, 635 (1984) (citations omitted). In the *Godfrey* decision, the Court of Appeals for the Federal Circuit elaborated on this definition by setting forth several factors for determining whether an officer or employee is "responsible" under I.R.C. § 6672. *Godfrey,* 748 F.2d at 1574. These factors focus on three interrelated concepts: the individual's status within the corporation, the individual's duties

under the corporation's operating legal documents, and the individual's actual authority over corporate operations. *See, e.g., Heimark v. United States,* 18 Cl.Ct. 15, 21 (1989); *George v. United States,* 819 F.2d 1008, 1011 (11th Cir.1987); *Gephart v. United States,* 818 F.2d 469, 475 (6th Cir.1987). "Thus, any person with sufficient status, duty and authority to avoid the default is a responsible person under § 6672." *Heimark,* 18 Cl.Ct. at 21; *see also Godfrey,* 748 F.2d at 1575; *White,* 372 F.2d 513, 178 Ct.Cl. at 771.

■ While the case law does not establish a fixed calculus for determining whether an individual's status, duties, and authority render him/her a "responsible person," the undisputed facts of this case indicate that plaintiff was clearly "responsible" under *Godfrey* during the relevant time period. As president, treasurer, chairman of the board, and majority shareholder, plaintiff's status at Pirsch was undeniable. Plaintiff's salary was commensurate with his status, and he was the highest paid employee at Pirsch. While the status of a corporate officer alone is not controlling for purposes of I.R.C. § 6672, status is a material factor for determining whether an individual is a "responsible person." *Godfrey,* 748 F.2d at 1575. Thus, plaintiff's elevated status at Pirsch is of significant importance for this inquiry.

■ In addition, plaintiff's duties at Pirsch establish him as a "responsible person" under *Godfrey.* "As the case law makes abundantly clear, a person's 'duty' under § 6672 must be viewed in light of his power to compel or prohibit the allocation of corporate funds." *Id.* at 1576. Here, plaintiff largely controlled Pirsch's financial affairs and other significant corporate activities and operations. Most importantly, plaintiff controlled which creditors were to be paid and when such payments were to be made. These specific duties clearly support the conclusion that plaintiff was a "responsible person."

■ Finally, plaintiff's authority at Pirsch supports a finding that he was a "responsible person" during the period in suit. Indeed, plaintiff's authority at Pirsch was greater than that of any other Pirsch employee. Once a decision was made by plaintiff, that

decision could not be overridden by any other individual. Of particular relevance, plaintiff was the sole individual at Pirsch with the authority to sign checks for the corporation. While plaintiff's signature was often imprinted on checks by the controller through the use of a check protector machine, this practice was discontinued as Pirsch's financial situation deteriorated. Indeed, by the third quarter of 1986, plaintiff's actual signature was required by M & I Bank to honor any checks drawn on the Pirsch corporate checking account. Thus, if plaintiff wished to prevent the issuance of a corporate check during this period, he would need only to deny the necessary signature. Given these undisputed facts, plaintiff's status, duties, and authority at Pirsch portray an unmistakable pattern of personal responsibility under I.R.C. § 6672.

While plaintiff does not dispute his status, duties, and authority within the Pirsch organization, he contends that other individuals at Pirsch such as Mr. Cuccia were "responsible" for the nonpayment of the employment taxes. Yet this argument ignores the language and application of I.R.C. § 6672. Liability under I.R.C. § 6672 is not limited only to the single officer with the most control or authority over corporate affairs. *Bolding v. United States*, 565 F.2d 663, 215 Ct.Cl. 148, 161 (1977). Indeed, all responsible officers and employees of a corporation may be found jointly and severally liable. *Godfrey*, 748 F.2d at 1575. Thus, even if Mr. Cuccia was also found to be a responsible person, that fact alone would not absolve plaintiff from his own responsibility.

## II. *Willfulness*

Once a court has found an individual to be a "responsible person" under I.R.C. § 6672, it must next determine whether he/she acted "willfully" in failing to collect, truthfully account for, or pay over the delinquent and unpaid federal taxes. The courts have adopted several standards for determining whether or not a "responsible person" acted "willfully": the "deliberate choice" standard, *White v. United States*, 372 F.2d 513, 178 Ct.Cl. 765, 778–79 (1967); the "reckless disregard" standard, *Godfrey*, 748 F.2d at 1577; and the "personal fault" standard, *Slodov v.*

*United States*, 436 U.S. 238, 254, 98 S.Ct. 1778, 1788, 56 L.Ed.2d 251 (1978).

### A. *The "Deliberate Choice" Standard of Willfulness*

This court's predecessor, the United States Court of Claims, defined "willfulness" in the context of I.R.C. § 6672 as "a deliberate choice voluntarily, consciously, and intentionally made to pay other creditors instead of paying the Government." *White*, 372 F.2d at 521; *see also Feist*, 607 F.2d at 961; *Bolding v. United States*, 565 F.2d 663, 215 Ct.Cl. 148 (1977); *Teel v. United States*, 529 F.2d 903 (9th Cir.1976); *McCarty v. United States*, 437 F.2d 961, 194 Ct.Cl. 42 (1971). Under this standard "it is not necessary that there be present an intent to defraud or to deprive the United States of taxes due, nor need bad motives or wicked design be proved ..." *White*, 372 F.2d at 521. Rather, the focus is placed upon the diligence of the "responsible person" in attending to the duty to pay over the withheld employment taxes. *Heimark v. United States*, 18 Cl.Ct. 15, 24 (1989).

The undisputed facts presented by defendant clearly indicate that plaintiff voluntarily, consciously, and intentionally chose to withhold payment of the Pirsch employment taxes from the IRS. By the third quarter of 1986, plaintiff knew that Pirsch's withheld employment taxes were not being paid over to the IRS. Plaintiff himself stated in his deposition that he "postponed" payment to the IRS due to Pirsch's unfavorable financial situation. In addition, the controller at Pirsch, Mr. Cuccia, alleged in his deposition that he was explicitly instructed by plaintiff to refrain from paying any taxes to the IRS. Furthermore, once M & I Bank began to require plaintiff's signature for all checks drawn on Pirsch's checking account, no checks made payable to the IRS were authorized. Indeed, according to Mr. Cuccia's affidavit, no checks were even written to the IRS during the period in suit. Thus, plaintiff's failure to pay the withheld employment taxes to the IRS must be construed as a "deliberate choice."

### B. *The "Reckless Disregard" Standard of Willfulness*

A second test of "willful" behavior has also been applied by the Court of Appeals for the Federal Circuit as a corollary to the "deliberate choice" standard. "Willful conduct may also include a reckless disregard of an 'obvious and known risk' that taxes might not be remitted." *Godfrey,* 748 F.2d at 1577 (*quoting Feist,* 607 F.2d at 961). In this way, I.R.C. § 6672 imposes liability on responsible individuals who allow other creditors to be paid, instead of the United States, through a deliberate disregard of their duties and responsibilities. *See generally IRS v. Blais,* 612 F.Supp. 700, 709–711 (D.Mass.1985).

Under the "reckless disregard" standard, a responsible person will be held liable if "he (1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily." *Wright v. United States,* 809 F.2d 425, 427 (1987). Here, defendant's evidence clearly indicates that plaintiff recklessly disregarded a known risk that the withheld employment taxes would not be paid to the IRS. First, plaintiff knew or should have known of the risk that employment taxes were not being paid. By early 1986, plaintiff was aware of Pirsch's cash flow problem and understood the ramifications of that financial crisis on the corporation's ability to pay its creditors. Indeed, it was plaintiff that filed Pirsch's petition for bankruptcy in September of 1986. Thus, plaintiff must have at least recognized the grave risk that employment taxes might not be paid to the IRS.

Second, plaintiff could have easily determined the status of the withholding tax account during the period in suit. Plaintiff's authority at Pirsch entitled him to examine the corporate records at any time. Such an examination would have undoubtedly revealed the corporation's tax delinquencies. Yet despite the ease by which plaintiff could have accessed these records, no such examination was made.

Finally, plaintiff failed to take any actions to ensure payment of the withheld employment taxes. This failure can be witnessed most clearly through plaintiff's interactions with M & I Bank of Racine. Once M & I Bank implemented its policy requiring plaintiff's written authority to honor any checks drawn on Pirsch's corporate account, plaintiff explicitly directed the bank to accept checks made payable to several creditors. However, plaintiff never authorized M & I Bank to accept checks made payable to the IRS. Indeed, according to Mr. Cuccia's affidavit, no checks were written to the IRS during this period. Plaintiff's failure to ensure payment of the withheld employment taxes epitomizes his reckless disregard of the obvious and known risk that those taxes might not be remitted.

### C. *The "Personal Fault" Standard of Willfulness*

A third standard of "willfulness" has been applied by the Supreme Court in its interpretation of I.R.C. § 6672. The Court noted that "[t]he fact that the provision imposes a 'penalty' and is violated only by a 'willful failure' is itself strong evidence that it was not intended to impose liability without personal fault." *Slodov,* 436 U.S. at 238, 98 S.Ct. at 1780. Here, plaintiff's personal fault is beyond question. While plaintiff contends that Pirsch's controller was at fault for the failure to pay over the withheld employment taxes, plaintiff has not adequately disputed his own personal fault. Plaintiff's only excuse for his own failure to ensure the payment of Pirsch's employment taxes was that he was travelling during a substantial portion of the period in suit. Plaintiff's absence from the corporation's headquarters for a portion of the 1986 tax year is insufficient to absolve him from personal fault. Indeed, plaintiff's personal fault is demonstrated clearly by his actions, duties, authority, and status at Pirsch. Under I.R.C. § 6672, these important responsibilities cannot cease merely because of a businessperson's hectic travel schedule.

### Conclusion

For the above stated reasons, defendant has satisfied its burden of demonstrating, by a preponderance of the evidence, the absence of any genuine issue of material fact. *Celo-*

**734**

*tex,* 477 U.S. at 325, 106 S.Ct. at 2553. Indeed, with respect to § 6672, defendant clearly established that plaintiff was a "responsible person" who acted "willfully" in failing to comply with his duty to collect, truthfully account for, and pay over withheld employment taxes to the IRS.

■ Once this initial burden of proof was satisfied by defendant, the burden shifted to plaintiff to demonstrate that a genuine factual dispute did exist. *Sweats Fashions, Inc.,* 833 F.2d at 1563. This burden was not adequately satisfied by plaintiff. Therefore, summary judgment is appropriate in favor of defendant as a matter of law.

Accordingly, defendant's motion for summary judgment is hereby granted. The Clerk is directed to dismiss plaintiff's complaint. No costs.